STATE of Missouri, Respondent,

v.

Charles William PARKER, Appellant.

No. 55457.

Supreme Court of Missouri, Division No. 2.

Feb. 8, 1971.

**738**

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Legal Aid and Defender Society of Greater Kansas City, for appellant; Williard B. Bunch, Chief Defender, John J. Cosgrove, Kansas City, Public Defender, of counsel.

STOCKARD, Commissioner.

Appellant, Charles William Parker, was found guilty by a jury in the Circuit Court of Jackson County of robbery in the first degree, and pursuant to § 556.280, RSMo 1969, V.A.M.S., the court assessed the punishment at imprisonment for a term of fifteen years. The facts need not be set forth because the only contention on this appeal pertains to the validity of the procedure for selection of the jury.

Appellant's contention is that § 497.130, RSMo 1969, V.A.M.S., violates the Fifth and Fourteenth Amendments of the Constitution of the United States because it provides "that petit jurors shall be selected from registered voters only and in the case of women limits their selection to persons who are registered to vote and who had volunteered for jury service." Appellant further asserts that the procedure established for obtaining juors "ignores the constitutional requirement that a jury panel shall be drawn from a cross-section of the community."

The challenged statute provides that the board of jury supervisors shall obtain from the board of election commissioners a complete list as near as can be by streets and precincts of all of the last available current qualified voters in the county. Provision is then made for the selection from that list of at least 25,000 names from the various precincts which shall comprise the jury list. From this list by use of a "key number" the prospective jurors are selected. A questionnaire is then sent to the persons selected, which contains this provision applicable to women: "The Constitution permits women to elect to serve or not to serve as jurywomen. Any woman who elects not to serve will fill out this paragraph and mail this questionnaire to the jury commissioner at once. It will not be necessary to answer the other questions. I elect not to perform jury service." There is then a place for signature.

It has been held in numerous cases that the use of voter registration lists as the sole source of obtaining names of prospective jurors is not of itself constitutionally impermissible "unless this system results in the systematic exclusion of a 'cognizable group or class of qualified citizens.'" Camp v. United States, 5 Cir., 413 F.2d 419, 421, certiorari denied 396 U.S. 968, 90 S.Ct. 451, 24 L.Ed.2d 434; Grimes v. United States, 5 Cir., 391 F.2d 709, certiorari denied 393 U.S. 825, 89 S.Ct. 87, 21 L.Ed.2d 96; Rabinowitz v. United States, 5 Cir., 366 F.2d 34; United States v. Caci, 2 Cir., 401 F.2d 664, 4 A.L.R. Fed. 864, certiorari denied 394 U.S. 917, 89 S.Ct. 1180, 22 L.Ed.2d 450; United States v. Kelly, 2 Cir., 349 F.2d 720, certiorari denied 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544; United States v. Agueci, 2 Cir., 310 F.2d 817, certiorari denied 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11; Simmons v. United States, 5 Cir., 406 F.2d 456, certiorari denied 395 U.S. 982, 89 S.Ct. 2144, 23 L.Ed.2d 770; United States v. Butera, 1 Cir., 420 F.2d 564; United States v. Dangler, 5 Cir., 422 F.2d 344, 345. It has also been held in numerous cases, as stated in Camp v. United States, supra, "that those who do not choose to register to vote cannot be considered a 'cognizable group.'" See Grimes v. United States, supra; United States v. Caci, supra; United States v. Kelly, supra; Gorin v. United States, 1 Cir., 313 F.2d 641, certiorari denied 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052; Chance v. United States, 5 Cir., 322 F.2d 201.

In the consideration of appellant's contention, it is interesting to note that the Jury Selection and Service Act of 1968, 28 U.S.C.A. §§ 1861–1869, pertaining to the selection of juries in federal courts, as stated in Camp v. United States, supra, "requires the use of voter registration lists under jury plans which are to be (and have been) approved by the Judicial Council and the Chief District Judge of the District. Plans, if approved, may require supplemental sources if needed to assure a fair cross-section of the community. But the principal, if not sole, source is to be voter registration lists for random selection." In speaking of the above Act, it was said in Simmons v. United States, supra, that it was "designed to provide impartial jurors," and also after reviewing the history of the act it was said, " 'the best thought of all three branches of government points toward voter registration lists as representing "the best cross-section of the community; indeed, they are probably the most broadly based lists available." ' "

Other than pointing out that there are citizens in Jackson County who are twenty-one years of age or older who are not registered to vote, appellant does not purport to show that the method provided by § 497.130 for the selection of prospective jurors results in the systematic exclusion of a cognizable group or class of qualified citizens. We find no merit to this contention.

■ Appellant next asserts that Art. I, § 22(b), Constitution of Missouri, V.A.M.S., which directs that the court shall "excuse any women who requests exemption [from jury service] before being sworn as a juror," prevents a jury panel from being drawn from a fair cross-section of the community, and therefore results in "a denial of appellant's rights as guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States." The answer to this contention is found in Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118.

In that case, the defendant was found guilty of second degree murder. The Florida statute, F.S.A. § 40.01(1), provided that jurors should be taken from the male and female persons of the county who met certain qualifications, "provided, however, that the name of no female person shall be taken for jury service unless said person has registered with the clerk of the circuit court her desire to be placed on the jury list." The Supreme Court of Florida held the above statutory provision not to infringe upon any constitutionally protected right. Hoyt v. State, Fla., 119 So.2d 691.

The United States Supreme Court quoted the above statutory provision and noted that defendant had shown that since its enactment "only a minimal number of women have so registered," and that she challenged "the constitutionality of the statute both on its face and as applied in [that] case." In its opinion the court pointed out that in 1961, the time of the opinion, women were eligible for jury service in all but three states, but that eighteen of the remaining forty-seven states and the District of Columbia "have accorded women an absolute exemption based solely on their sex, exercisable in one form or another." In three of those states the exemption is automatic unless a woman volunteers for jury service. In eight of those states women may be excused if they have family responsibilities which would make jury service an undue hardship. In the District of Columbia and the remaining seven states, of which Missouri is one, a woman is eligible for jury service, but she is entitled to be excused from such service upon request. See the comments of the court and the footnotes at 368 U.S. 1. c. 62–63, 82 S.Ct. 1. c. 163, 7 L.Ed.2d 1. c. 122–123.

The court stated that the effect of the Florida statute was to accord "women an absolute exemption from jury service unless they expressly waive that privilege." In Missouri, the effect of our constitutional provision is to accord women an absolute exemption from such service if requested. The result is substantially the same. In any

event, if the Florida statute meets the minimum federal constitutional requirements, so does the constitutional provision in Missouri.

In the Hoyt case, the Supreme Court of the United States stated that the Fourteenth Amendment reaches not only arbitrary class exclusions from jury service based on race or color, but also all other exclusions which "single out" any class of persons "for different treatment not based on some reasonable classification," citing Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667 l. c. 670, 98 L.Ed. 866. But it then held that the court could not "conclude that Florida's statute was not 'based on some reasonable classification' and that it is thus infected with unconstitutionality." In arriving at this conclusion the court made the following comments:

"Despite the enlightened emancipation of women from the restrictions and protection of bygone years, and their entry into many parts of community life formerly considered to be reserved to men, woman is still regarded as the center of home and family life. We cannot say that it is constitutionally impermissible for a State, acting in pursuit of the general welfare, to conclude that a woman should be relieved from the civic duty of jury service unless she herself determines that such service is consistent with her own special responsibilities.

\*   \*   \*   \*   \*   \*

"It is true, of course, that Florida could have limited the exemption, as some other States have done, only to women who have family responsibilities. But we cannot regard it as irrational for a state legislature to consider preferable a broad exemption, whether born of the State's historic public policy or of a determination that it would not be administratively

feasible to decide in each individual instance whether the family responsibilities of a prospective female juror were serious enough to warrant an exemption.

"Likewise we cannot say that Florida could not reasonably conclude that full effectuation of this exemption made it desirable to relieve women of the necessity of affirmatively claiming it, while at the same time requiring of men an assertion of the exemptions available to them."

The court then considered the contention that only 220 women out of approximately 46,000 registered female voters in the county had volunteered for jury service. It then held that this argument was "beside the point," and said: "Given the reasonableness of the classification involved \* \* the relative paucity of women jurors does not carry the constitutional consequence appellant would have it bear."

Appellant does not cite or refer to the Hoyt case, and of course does not attempt to distinguish it. All the United States Supreme Court cases cited and relied on pre-date it, and none are precisely in point. Instead, they announce only general principles. In view of the Hoyt case, and the discussion of this issue in State v. Davis, Mo., 462 S.W.2d 798 handed down currently herewith, we conclude the contention of appellant is without merit.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.