STATE of Missouri, Plaintiff–
Respondent,

v.

Sean M. HONSINGER, Defendant–
Appellant.

No. SD 31628.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 4, 2012.

Nancy R. Price, Springfield, MO, for Appellant.

J. Daniel Patterson, Matthew J. Arens, for Respondent.

NANCY STEFFEN RAHMEYER, J.

Sean M. Honsinger ("Appellant") was charged with and convicted of driving while intoxicated ("DWI") in violation of section 577.010.[1] He brings this appeal claiming 1) that there was insufficient evidence to establish beyond a reasonable

---

1. All references to statutes are to RSMo 2000, unless otherwise specified. We note that section 577.010 was amended in 2010; however, Appellant's offense was committed on September 4, 2009.

doubt the required elements of DWI, and 2) the trial court committed plain error in admitting an officer's testimony about the horizontal gaze nystagmus ("HGN") test results because there was no proper foundation.

■ Our review is limited to determining whether there was sufficient evidence from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt. *State v. Graves,* 358 S.W.3d 536, 539 (Mo.App. S.D.2012). This Court considers "only the evidence and reasonable inferences derived therefrom favorable to the judgment and disregards all unfavorable evidence and inferences." *Id.* The fact-finder determines the credibility, reliability, and weight to be given to a witness's testimony, of which the fact-finder is entitled to believe some, none, or all. *State v. Breedlove,* 348 S.W.3d 810, 814 (Mo.App. S.D.2011).

## Point II

■ For ease of discussion, we will take Appellant's second point out of order. Appellant contends that the trial court committed plain error in admitting the testimony of a police officer related to the HGN test because the State failed to lay the required foundation showing the officer was sufficiently trained and had conducted the test appropriately. It is conceded that Appellant made no objection to the lack of foundation for the admission of the testimony and, thus, plain error review is the only review available.

■ A claim after a trial that there was no adequate foundation for an expert's opinion is not a subject for plain error review. *State v. Hudson,* 970 S.W.2d 855, 860 (Mo.App. S.D.1998). Claims of inadequate foundation will not be considered for the first time on appeal. *Id.* " 'It is particularly important that where an inadequate foundation has been laid for admission of

evidence that the objection made be specific as such foundation deficiencies can frequently be remedied. We will not review the contention of inadequate foundation raised for the first time on appeal.' " *Id.* (quoting *State v. Jones,* 569 S.W.2d 15, 16 (Mo.App. St.L.D.1978)).

If a question exists as to whether the proffered opinion testimony of an expert is supported by a sufficient factual or scientific foundation, the question is one of admissibility. It must be raised by a timely objection or motion to strike.

Once opinion testimony has been admitted, as any other evidence, it may be relied upon for purposes of determining the submissibility of the case. The natural probative effect of the testimony is a consideration for the fact finder.

*Washington by Washington v. Barnes Hosp.,* 897 S.W.2d 611, 616 (Mo. banc 1995) (internal citations omitted). The reasoning behind this is that if an objection had been made at trial that there was an improper foundation the witness could have been questioned further in order to establish the proper foundation. *State v. Rose,* 86 S.W.3d 90, 111 (Mo.App. W.D. 2002) (Spinden, P.J., concurring) (where by withholding a specific objection the defendant avoided the prosecutor's ability to cure the problem with a proper question). Otherwise, the defendant could wait until an unfavorable outcome and then seek reversal on appeal. *Id.* The circuit court did not err in admitting evidence offered without objection. "Plain error is not facially established, and this Court declines to exercise its discretion and grant plain error review in this matter." *State v. Jackson,* 186 S.W.3d 873, 883 (Mo.App. W.D.2006). Point II is denied.

## Point I

■ DWI is defined as the operation of a motor vehicle "while in an intoxicated

or drugged condition." Section 577.010.1. "Drugged condition" has been equated with "intoxicated condition" and, as a result, the two terms may be used interchangeably. *State v. Hoy,* 219 S.W.3d 796, 802 (Mo.App. S.D.2007). The proof that is necessary to establish driving under the influence of drugs is no different than that to make a case for driving under the influence of alcohol. *State v. Savick,* 347 S.W.3d 147, 155 (Mo.App. S.D.2011). Intoxication consists of three components: impaired ability, presence of a proscribed substance in the defendant's body at the time of the offense, and a causal connection between the proscribed substance and the defendant's impaired ability. *Id.* Appellant challenges the proof regarding all three of the components.

In the light most favorable to the judgment, the evidence at trial indicated the following. Appellant was in a motor vehicle accident in the parking lot of the Burger King on South Campbell. The manager of Burger King heard a crash and went outside to investigate; she saw that two vehicles were involved and both were damaged. Appellant was behind the wheel of his car and his vehicle was running at the time. The police officer who reported at the scene to investigate the accident, Officer Josh Steele, observed that Appellant had difficulty keeping his eyes open and that they were glassy and watery. Appellant was not able to maintain his balance and had trouble staying seated; when he took his back off the wall, he would start to fall over and would have to be pulled up. As he leaned to the side, he was about to fall over and had to be assisted. When Appellant attempted to stand up, he was unable to get to his feet on his own and the officer "had him sit back down for his safety."

Officer Steele asked Appellant what happened. Appellant replied "Sideways parking for me to girl, hit me. I don't have to explain it to you." Officer Steele had to yell at Appellant to get him to respond and, when Appellant did, his speech was slurred, he mumbled, and he was difficult to understand. Appellant would "put about a few words together and then stop and then continue." Officer Steele did not smell alcohol on Appellant.

When asked how much he had to drink, Appellant replied that he drank gin and tonic and also stated that he had taken Xanax. Officer Steel performed a portion of the HGN test on Appellant after he was placed on a backboard. Appellant had lack of smooth pursuit, which showed indicators in both eyes, and showed nystagmus at maximum deviation in his right eye. Because Appellant could not keep his eyes open, the test was not completed. Officer Steele testified that, based on his training and experience, Appellant's performance on the test indicated that Appellant was "impaired by some substance"; Officer Steele also smelled an odor of marijuana coming from Appellant.

As Appellant was being loaded into an ambulance, Officer Steele noticed that Appellant appeared to be hallucinating—he was grabbing at things in the air, but there was nothing there to grab. Appellant's pupils were slow to react to light. During an interview with Officer Steele, Appellant stated that during the last three hours his "mind was racing" and that he had used "very little" marijuana three weeks before. Appellant stated that he had chronic anxiety and, when asked if he had been taking any medication, stated "I've been taking what I got" or words to that effect. Officer Steele testified that in his opinion Appellant was very much impaired and not safe to operate a motor vehicle.

Appellant challenges the first element of the evidence necessary to prevail, that Appellant had an impaired ability to

operate a motor vehicle, for the reason that there were no eye witnesses to the accident or to Appellant's behavior prior to the accident. Appellant argues that his behavior after the accident could have been the result of shock or other injuries as a result of the accident itself. Appellant's contentions ignore our standard of review. The trial court could have found that Appellant's behavior after the accident was more consistent with the actions of someone in a serious automobile accident; however, we leave the credibility determinations of the court with the trial court. We cannot say that as a matter of law Appellant's actions were those of someone injured in an accident and not those of someone who was impaired.

The evidence before the court included the testimony that the front of Appellant's car and the back of the other car were damaged as a result of Appellant crashing into a parked vehicle. Appellant exhibited many indicators of intoxication, including glassy, watery eyes and the inability to keep his eyes open. He was unable to maintain his balance and could not get to his feet. Furthermore, he was not responsive to questions and slurred his speech when giving nonsensical answers. Appellant appeared to be hallucinating and failed the part of the HGN test that was given to him. Also of importance is that Appellant admitted to having used marijuana three weeks prior to the accident and taking Xanax, as well as drinking gin and tonic.

 Likewise, as to the second element that a proscribed substance was present in Appellant's body at the time of the offense, Appellant testified to using alcohol, Xanax, and marijuana. Appellant smelled of marijuana at the scene. The court could infer that these substances were in Appellant's body at the time of the incident. Substantial evidence exists that Appellant had used one or a combination of "drugs" prior to the accident. There has never been a requirement in a driving while intoxicated case that a drug or alcohol evaluation be performed in order to find a defendant guilty of the charge.

Finally, as to whether there was a causal connection between the presence of the proscribed substance and the impaired ability, the court was free to consider the officer's opinion that Appellant was intoxicated. Recent consumption of an intoxicant coupled with signs consistent with intoxication evidences causation. *Hoy,* 219 S.W.3d at 807; *Savick,* 347 S.W.3d at 157. The fact that Appellant showed signs of intoxication, including the impaired judgment necessary to hit a parked car, supports an inference that the presence of drugs in his body caused the impairment. Point I is denied.

The judgment is affirmed.

GARY W. LYNCH, P.J., and
WILLIAM W. FRANCIS, JR., J., Concur.

